**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **3DNS, INC.,**<br><br>Plaintiff<br><br>v.<br><br>**WOW.AI LLC, RICHARD LATONA, AND SCOTT WALKER,**<br><br>Defendants | CIVIL NO.:<br><br>RE: **BREACH OF CONTRACT, DAMAGES, TORT, UNJUST ENRICHMENT.** |

## COMPLAINT

COMES NOW Plaintiff 3DNS, Inc. ("3DNS"), by and through the undersigned counsel, and very respectfully alleges and requests as follows:

### NATURE OF THE ACTION

1. This is an action stemming from the failure of WOW.AI LLC ("WOW," formerly AI Venture Studios LLC), Richard Latona ("Mr. Latona"), and Scott Walker ("Mr. Walker" and, together with WOW and Mr. Latona, "Defendants") to pay outstanding balances for software development services performed by 3DNS pursuant to an oral contract, as amended.

2. Although Defendants repeatedly acknowledged the debt underlying 3DNS's claims, directed the issuance and structure of invoices for work performed by 3DNS, and paid several invoices in full, WOW has unjustifiably refused to pay the remaining outstanding balance of $687,700 for services rendered by 3DNS between February and June 2025, and Messrs. Latona and Walker have used their control and influence over WOW negligently, tortiously and in bad faith with the intention of depriving 3DNS of payments for its services, knowing that 3DNS had complied with its contractual obligations to WOW and that such non-payments constitute breach of WOW's contractual obligations to 3DNS.

3. Accordingly, Defendants are liable to 3DNS for the payment of the outstanding balance of $687,700, plus interest, costs and attorneys' fees.

## THE PARTIES

4. 3DNS is a Delaware corporation with its principal place of business located at 261 Davenport Road, Toronto, Ontario, M5R 1K3, Canada. It operates an on-chain domain registrar and provides infrastructure enabling websites to function across both Web2 and Web3 environments.

5. WOW is a Puerto Rican limited liability company with offices located at 151 San Francisco #200, San Juan, PR, 00901.

6. Upon information and belief, all the members of WOW are citizens of Puerto Rico or of another jurisdiction that is not Delaware or Canada.

7. Mr. Latona is a member, manager and the Chief Executive Officer of WOW and, upon information and belief, is a citizen of Puerto Rico.

8. Mr. Walker is a member and manager of WOW and, upon information and belief, is a citizen of Puerto Rico.

9. Mr. Ryan Steel is a member of WOW and, upon information and belief, is a citizen of Puerto Rico or of another jurisdiction that is not Delaware or Canada.

10. The Trustee of Enduring Legacy Trust is a member of WOW and, upon information and belief, Mr. Latona is the trust's settlor and beneficiary, and the trustee is not a citizen of Delaware or Canada.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the present civil action pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs,

and arises between, on the one hand, a citizen of a State and a foreign state and, on the other, citizens of other States.

12. Venue in this Court is proper under 28 U.S.C. §1391(b) because the events and omissions giving rise to the Complaint occurred within the District of Puerto Rico and all defendants are citizens of Puerto Rico.

## FACTUAL ALLEGATIONS

**A. The Contract.**

13. Between March and July 2024, Mr. Paul Gauvreau ("Mr. Gauvreau"), a director of 3DNS, met with Messrs. Latona and Walker to discuss potential collaboration opportunities.

14. As part of those discussions, 3DNS developed multiple website prototypes as proof-of-concept work to evaluate the viability of entering into a commercial relationship with them.

15. In or around July 2024, Mr. Gauvreau met with Messrs. Latona and Walker at a conference in Nashville, Tennessee, where they discussed the development of a website on the Trump.ai web domain.

16. As a result of that meeting, in or around July 2024, 3DNS and Messrs. Latona and Walker entered into an oral contract (the "Contract"), pursuant to which 3DNS agreed to provide development resources, including at least one front-end developer and one back-end developer, to work on building Trump.ai and, in exchange, Messrs. Latona and Walker agreed to pay 3DNS a monthly fee of $50,000.

17. At that time, Messrs. Latona and Walker informed Mr. Gauvreau that their rights and obligations under the Contract would be assumed by or assigned to a legal entity they already owned or would create.

18. Shortly thereafter, Mr. Walker made an initial payment of $30,000 to allow 3DNS to begin performing the tasks contemplated under the Contract.

19. On August 1, 2024, AI Venture Studios LLC ("AI Venture Studios") was formed.

20. On information and belief, AI Venture Studios assumed or was assigned the rights and obligations of Messrs. Latona and Walker under the Contract.

21. On January 31, 2025, AI Venture Studios changed its name to WOW.AI LLC.

**B. The 2024 Amendment.**

22. In or around September 2024, Mr. Gauvreau met with Messrs. Latona and Walker in Asia, during which meeting they informed Mr. Gauvreau that they wanted 3DNS to devote additional resources to the ongoing work under the Contract, with the objective of developing additional websites. They further indicated that this work would be performed for WOW (at the time named AI Venture Studio), which had assumed or would assume the rights and obligations under the Contract.

23. Accordingly, 3DNS and Messrs. Latona and Walker agreed to amend the Contract to require 3DNS to expand its team and perform work on additional projects as requested by Defendants. In exchange, the Defendants agreed that WOW would pay 3DNS a monthly fee of $150,000 to cover its development "burn rate" (the "2024 Amendment").

24. As part of these discussions, 3DNS and Defendants also agreed that 3DNS would be granted units in WOW.

25. Although the paperwork memorializing this agreement reflected that such WOW units were issued in Mr. Gauvreau's name, the understanding and agreement was that Mr. Gauvreau would hold those units in trust for 3DNS.

4

26. In September 2024, Mr. Walker, on WOW's behalf, made a further payment of $50,000 to 3DNS under the 2024 Amendment.

### C. The Original Invoices

27. In 2024, 3DNS did not issue any formal invoices under the Contract, originally or as amended by the 2024 Amendment. Throughout that year, Messrs. Latona and Walker continually told Mr. Gauvreau that payment would be forthcoming.

28. In January 2025, however, Defendants instructed 3DNS to: **(a)** issue four monthly invoices dated October 2024 to January 2025; **(b)** ensure that the total of the four invoices equaled the outstanding amount owing after crediting amounts already paid; and **(c)** structure each invoice to reasonably reflect estimated hours worked at reasonable hourly rates, rather than a single monthly charge of $150,000.

29. In compliance with Defendants' instructions, in January 2025, 3DNS issued four invoices dated October 2024, November 2024, December 2024, and January 2025, respectively (collectively, the "Original Invoices"). Taken together, the Original Invoices reflected the amounts owing under the Contract, in its original form and as amended by the 2024 Amendment, net of payments already made. They also reasonably estimated hours worked at reasonable hourly rates.

### D. The 2025 Amendment.

30. In January 2025, Defendants requested that 3DNS deploy more resources for the development of additional websites and agreed that compensation would shift to an hourly model, with an increase in hours and costs expected in the near term. As such, the parties further amended the Contract to provide that, on a short-term basis, 3DNS would deploy additional resources and WOW would pay for the hours worked at the hourly rates (the "Agreed-Upon Rates") set out in the Original Invoices (the "2025 Amendment"). The parties understood and agreed that hours

5

would be assessed and invoiced at the level of full-time or part-time work performed by each resource each month.

31. After entering into the 2025 Amendment, WOW paid the Original Invoices as set out below:

    a. On January 13, 2025, WOW issued a payment via wire transfer in the amount of $184,800 corresponding to the October 2024 invoice.

    b. On February 11, 2025, WOW issued a payment via wire transfer in the amount of $184,800 corresponding to the November 2024 invoice.

    c. On March 26, 2025, WOW issued a payment via wire transfer in the amount of $174,800 corresponding to the December 2024 invoice.

    d. On April 22, 2025, WOW issued a payment via wire transfer in the amount of $150,800 corresponding to the January 2025 invoice.

32. Throughout this period, Defendants continually represented that WOW would pay all amounts owing under the Contract, as amended by the 2024 Amendment and the 2025 Amendment.

**E. Defendants' Breach.**

33. At all relevant times, Messrs. Latona and Walker acted on behalf of WOW and exercised control over the negotiation of and compliance with the Contract, the 2024 Amendment, and the 2025 Amendment, and over the decisions to pay or not pay 3DNS's invoices for services rendered.

34. At all relevant times, 3DNS complied with its obligations under the Contract, the 2024 Amendment, and the 2025 Amendment, by providing the services required thereunder.

35. Between April and June 2025, the relationship between 3DNS and Defendants deteriorated. Under the control, direction and influence of Messrs. Latona and Walker, WOW failed to make another monthly payment after April 22, 2025.

36. In June 2025, 3DNS and WOW terminated their contractual relationship, following which 3DNS issued invoices for work performed between February 2025 and June 2025 (the "Unpaid Invoices").

37. As required under the 2025 Amendment, the Unpaid Invoices reflect the Agreed-Upon Rates and, per the parties' agreement, were assessed at the level of full-time or part-time work performed by each resource each month.

38. Despite 3DNS's repeated demands for payment, Defendants have unjustifiably failed and refused to pay the Unpaid Invoices, which total $687,700, and which amount is due, owing, and payable.

**FIRST CAUSE OF ACTION: BREACH OF CONTRACT AND DAMAGES**
**(AGAINST WOW)**

39. 3DNS incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

40. The Contract, as amended by the 2024 Amendment and the 2025 Amendment, constitutes a valid services agreement and a legally binding obligation pursuant to which 3DNS agreed to provide certain services in exchange for the agreed upon payments from WOW. See Articles 1230, 1233, and 1381 of the 2020 Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 9751, 9754, and 10291.

41. 3DNS complied with all of its obligations under the Contract, the 2024 Amendment, and the 2025 Amendment, by performing the services agreed upon therein in the

manner stipulated thereunder. See Article 1386 of the 2020 Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 10312.

42. WOW breached its obligations without cause by, among other things, failing to pay the Unpaid Invoices. See Article 1385 of the 2020 Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 10311.

43. As a direct and proximate result of WOW's breaches, 3DNS has suffered damages in the amount of $687,700 corresponding to the Unpaid Invoices, plus interests, which amounts are due, owing, payable and outstanding.

44. Accordingly, 3DNS respectfully requests that this Court enter judgment in its favor and against WOW finding that WOW breached its obligations under the Contract, the 2024 Amendment, and the 2025 Amendment, and awarding 3DNS $687,700 plus accrued interest. See Article 1158 of the Puerto Rico Civil Code of 2020, P.R. Laws Ann. tit. 31, § 9303.

**SECOND CAUSE OF ACTION: TORT (AGAINST LATONA AND WALKER)**

45. 3DNS incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

46. At all relevant times, Messrs. Latona and Walker exercised control and influence over WOW, negotiated the Contract, the 2024 Amendment, and the 2025 Amendment, and were fully aware of WOW's contractual obligations to 3DNS and the services rendered by 3DNS pursuant to the contractual agreements with WOW.

47. Since April 2025, despite knowing that 3DNS had complied with its contractual obligations to WOW, Messrs. Latona and Walker have used their control and influence over WOW negligently, tortiously and in bad faith with the intention of depriving 3DNS of payments for its

services, knowing that such non-payments constituted breach of WOW's contractual obligations to 3DNS.

48. As a direct and proximate result of the tortious conduct of Messrs. Latona and Walker, 3DNS has suffered damages in the amount of $687,700 corresponding to the Unpaid Invoices, plus interests, which amounts are due, owing, payable and outstanding.

49. Accordingly, 3DNS respectfully requests that this Court enter judgment in its favor and against Messrs. Latona and Walker, and awarding 3DNS $687,700 plus accrued interest. See Article 1536 of the Puerto Rico Civil Code of 2020, P.R. Laws Ann. tit. 31, § 10801.

### THIRD CAUSE OF ACTION: UNJUST ENRICHMENT (AGAINST ALL DEFENDANTS)

50. 3DNS incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

51. In the alternative to the existence of an enforceable agreement covering the services at issue, 3DNS provided valuable services to Defendants, including software development, engineering, infrastructure support, and related technical services.

52. Defendants knowingly requested, accepted, and benefited from these services.

53. Defendants were enriched by receiving the benefit of 3DNS's development work, technical expertise, infrastructure, and labor.

54. 3DNS reasonably expected to receive compensation for the services it rendered at Defendants' behest, as had been the case with prior invoices submitted for payment.

55. However, Defendants refused to pay the Unpaid Invoices without any cause justifying its failure to pay.

56. Defendants' retention of payments resulting from the benefits derived from the work performed by 3DNS caused in an unjust and inequitable enrichment.

57. As a result of Defendants' unjust enrichment, 3DNS has suffered damages in an amount of no less than $687,700, plus accrued interests, in addition to loss of opportunities to use those funds for other profitable purposes.

58. The damages sustained by 3DNS constitute an unjustifiable impoverishment.

59. Accordingly, should this Court find that no agreement existed between the parties, 3DNS is entitled to a judgment in its favor awarding 3DNS $687,700 plus accrued interests and related damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff 3DNS, Inc., respectfully requests that this Honorable Court grant the instant Complaint and enter Judgment in its favor and against Defendants as follows:

A. Awarding damages resulting from WOW's breach of the Contract, as amended through the 2024 Amendment and the 2025 Amendment in the amount of $687,700;

B. Awarding damages resulting from the tortious conduct of Messrs. Latona and Walker in the amount of $687,700;

C. In the alternative, awarding damages resulting from Defendants' unjust enrichment in the amount of $687,700;

D. Awarding pre-judgment and post-judgment interest as permitted by Puerto Rico law;

E. Awarding costs of suit and attorneys' fees; and

F. Granting such other and further relief as the Court deems just and appropriate.

IT IS HEREBY CERTIFIED that, on this same date, a true copy of the foregoing was filed through the court's CM/ECF system, which will generate a notice to all CM/ECF participants in this case.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 19th day of February 2026.

          **McCONNELL VALDÉS LLC**
          270 Muñoz Rivera Avenue
          Hato Rey, PR 00918,
          PO Box 364225
          San Juan, Puerto Rico 00936-4225
          Telephone: (787) 250-9292
          Fax (787) 759-8282

          *s/Roberto C. Quiñones-Rivera*
          Roberto C. Quiñones-Rivera
          USDC-PR No. 211512
          rcq@mcvpr.com

          s/*Daniel J. Pérez-Refojos*
          Daniel J. Pérez-Refojos
          USDC-PR No. 303909
          dpr@mcvpr.com

          *Attorneys for 3DNS, Inc.*