**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| 3DNS, INC., <br><br> Plaintiff, <br><br> v. <br><br> WOW.AI LLC, RICHARD LATONA, and SCOTT WALKER, <br><br> Defendants. | Civil Case No.:  26-cv-01101-SCC <br><br> CIVIL ACTION |

**MOTION TO DISMISS ALL CLAIMS AGAINST
CO-DEFENDANT SCOTT WALKER PURSUANT TO RULE 12(B)(6)**

**TO THE HONORABLE COURT**:

Defendant Scott Walker ("Defendant" or "Mr. Walker"), by and through undersigned counsel, respectfully moves this Honorable Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all claims asserted against him in his personal capacity in the Complaint filed by Plaintiff 3DNS, Inc. ("3DNS" or "Plaintiff"). In support thereof, Mr. Walker states as follows:

## I.    PRELIMINARY STATEMENT

This case arises from a contractual dispute between 3DNS and WOW.AI LLC ("WOW"), a Puerto Rican limited liability company, regarding alleged unpaid invoices for software development services.  The Complaint asserts three causes of action: (1) breach of contract against WOW; (2) tort against Mr. Walker and co-defendant Richard Latona; and (3) unjust enrichment against all defendants. Plaintiff seeks damages in the amount of $687,700, plus interest, costs, and attorneys' fees.

The claims against Mr. Walker are frivolous and must be dismissed in their entirety. At its core, this civil action is nothing more than a transparent and highly improper attempt to pierce the corporate veil of WOW and impose personal liability on a member of the LLC for the Company's

1

10392812

alleged contractual obligations—without pleading any facts that would support such an extraordinary remedy.

Under well-established First Circuit precedent, piercing the corporate veil is an extraordinary remedy that requires a showing of fraudulent intent. In *Crane v. Green & Freedman Baking Co.*, 134 F.3d 17, 21 (1st Cir. 1998), the First Circuit held that courts must consider "the respect paid by the shareholders themselves to the separate corporate identity; the fraudulent intent of the individual defendants; and the degree of injustice that would be visited on the litigants by recognizing the corporate identity." Critically, the court emphasized—citing *United Elec., Radio & Machine Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1093 (1st Cir. 1992)—that "a finding of some fraudulent intent is a *sine qua non* to the remedy's availability." *Id*. The party seeking to pierce the corporate veil bears the burden of producing "strong and robust evidence" that the corporate form should be disregarded. *Situ v. O'Neill*, 124 F. Supp. 3d 34, 47 (D.P.R. 2015). The Complaint contains no such allegations of fraud or wrongful conduct by Mr. Walker—because no such facts exist.

Mr. Walker is a member of WOW who served on its Board of Managers solely in his corporate capacity. As alleged in the Complaint, the contract and payments at issue ran through WOW; any participation by Mr. Walker occurred through the Company's collective governance, not in an individual or personal capacity.

Moreover, the foundational principles of limited liability under Puerto Rico law shield LLC members from personal liability for the debts and obligations of the Company. *See* 14 L.P.R.A. § 3501 *et seq.*; *see also Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (1st Cir. 1980) ("The normal rule is that a corporation has a legal existence separate from its stockholders."). Whatever contractual relationship the Complaint alleges to have existed was between 3DNS—through its director, Mr. Paul Gauvreau ("Mr. Gauvreau"), who was himself a

2

10392812

Manager on WOW's Board—and WOW as an entity. Mr. Walker was not a party to this relationship. Plaintiff has failed to allege any facts that would justify disregarding WOW's corporate form. Rather than pursue its contractual remedies against WOW, Plaintiff has improperly attempted to transform a straightforward contract dispute into a tort action against an individual member—a transparent effort to pierce the corporate veil without meeting its exacting requirements. This Court should not permit such an end run around the protections afforded by Puerto Rico law.

## II.    FACTUAL BACKGROUND

### A.    The Parties and WOW's Corporate Structure

WOW (formerly AI Venture Studios LLC) is a Puerto Rican limited liability company with offices located at 151 San Francisco #200, San Juan, Puerto Rico 00901. WOW was formed on August 1, 2024, as AI Venture Studios LLC and changed its name to WOW.AI LLC on January 31, 2025. Mr. Walker is a member of WOW and a resident of Puerto Rico. While Mr. Walker may have served on WOW's Board of Managers, any participation he had in that body was in his corporate capacity as a member and Manager of WOW, and any decisions regarding WOW's contracts or payments were made collectively through the Company's governance rather than by Mr. Walker in a personal capacity. Mr. Walker did not, in an individual or personal capacity, negotiate any contract with 3DNS, direct any payment, or otherwise bind or obligate himself. This distinction is fatal to Plaintiff's attempt to impose personal liability on Mr. Walker for the Company's alleged obligations.

### B.    The Alleged Contractual Relationship

The Complaint alleges that in or around July 2024, 3DNS and Messrs. Latona and Walker entered into an oral contract pursuant to which 3DNS agreed to provide development resources, including front-end and back-end developers, to work on building a website on the Trump.ai web

3

10392812

domain, in exchange for a monthly fee of $50,000. As apparent from the Complaint, this arrangement originated with Mr. Gauvreau, 3DNS's director, who proposed that 3DNS provide development personnel—coders from his company—to the venture and charge WOW for their services. The negotiations were conducted on WOW's behalf through its authorized representatives in their corporate capacities. The Complaint provides *NO* facts alleging whether Mr. Walker was a party to these negotiations in a personal capacity rather than acting on behalf of WOW, if at all. Stated otherwise, there are no facts from which to glean that Walker made any individual decisions in a personal capacity regarding this arrangement.

Critically, the Complaint itself acknowledges that "Messrs. Latona and Walker informed Mr. Gauvreau that their rights and obligations under the Contract would be assumed by or assigned to a legal entity they already owned or would create." The Complaint further alleges that AI Venture Studios LLC (now WOW) "assumed or was assigned the rights and obligations of Messrs. Latona and Walker under the Contract." Thus, by Plaintiff's own admission, whatever contractual relationship existed was between 3DNS and WOW as an entity—not Mr. Walker in his personal capacity. Taking the Complaint's allegations as true, this alleged assignment would operate as a novation, extinguishing any arguable personal obligation. *See Exxon Corp. v. Burglin*, 4 F.3d 1294, 1298 (5th Cir. 1993) ("When a contract is assigned, the assignor is relieved of his duties under the contract.").

The Complaint then describes a series of amendments to the contract—the "2024 Amendment" and the "2025 Amendment"—which, as the Complaint alleges, were undertaken by and through WOW as an entity, not by Mr. Walker in his personal capacity. The Complaint further alleges that the payments on the invoices at issue were made by WOW, not by Mr. Walker personally. Notably, even Plaintiff acknowledges this distinction: the breach of contract claim itself is asserted only against WOW, not against Mr. Walker. Plaintiff's deliberate decision to

4

10392812

exclude Mr. Walker from its breach of contract claim is a tacit—and fatal—admission that Mr. Walker was not a party to the contract and bears no personal contractual obligation.

C.      The Absence of a Written Contract and Failure of Consideration

Despite Plaintiff's characterization of the arrangement as a binding services agreement, the Complaint itself reveals that no written contract was ever executed between the parties. Plaintiff alleges the existence of a "written contract" in its civil cover sheet, yet the body of the Complaint describes nothing more than an oral agreement that was informally negotiated and repeatedly modified without any formal documentation. No written contract has been produced or attached to the Complaint because none exists.

More fundamentally, 3DNS was contracted to deliver technology—specifically, software development services and a functional website product—yet the Complaint conspicuously fails to allege that 3DNS actually delivered any completed, functional product to WOW. The invoices at issue reflect charges for development time, hourly rates, and "burn rate" expenses—not for the delivery of any finished product. In short, 3DNS is claiming breach of contract for a product it does not allege it delivered under a written contract that does not exist. Stated otherwise, in addition to wrongfully attempting to pierce the corporate veil, 3DNS does not allege any facts sufficient to suggest that it fully performed its obligations under any contract (real or imagined) and is entitled to reciprocal performance. This fundamental failure undermines any claim that Mr. Walker—who was not a party to the contract—may be held personally liable for the alleged debts of the entity.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

5

10392812

544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*.

Although the court "'accept[s] as true the complaint's well-pleaded factual allegations' and 'draw all reasonable inferences in favor of the non-moving party,'" *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022) (quoting *McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017)), they do not credit "'conclusory legal allegations' [or] factual allegations that are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,'" *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015); and then quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)). *See Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023).

## IV.    ARGUMENT

### A.    The Tort Claim (Second Cause of Action) against Mr. Walker Must be Dismissed

#### 1.    *Mr. Walker Is Shielded from Personal Liability by Puerto Rico Law of Corporations*.

The fundamental principle of limited liability that is the hallmark of the LLC form is that no individual member may be held personally liable for the entity's debts. *See* 14 L.P.R.A. § 3526 (providing that members and managers of a Puerto Rico LLC are not personally liable for the obligations of the entity solely by reason of being a member or manager). The Complaint makes no allegation of fraud, bad faith, wanton misconduct, willful misconduct, or gross negligence by Mr. Walker—and for good reason: no such facts exist.

The Complaint alleges that Mr. Walker "exercised control and influence over WOW, negotiated the Contract, the 2024 Amendment, and the 2025 Amendment, and [was] fully aware

6

10392812

of WOW's contractual obligations to 3DNS." These allegations are conclusory and wholly unsupported by specific facts. Critically, the Complaint does not allege that Mr. Walker, in any personal capacity, negotiated the contract, directed any payment, or made any decision regarding the invoices at issue. Instead, the Complaint lumps Mr. Walker together with Mr. Latona in boilerplate fashion, alleging that "Messrs. Latona and Walker" jointly did everything—without identifying a single act Mr. Walker individually took. This is precisely the kind of "threadbare recital" that the Supreme Court held to be insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) (affirming dismissal where complaint offered only "conclusory statements" without factual support).

To the extent Mr. Walker had any involvement in WOW's affairs, it was exclusively in his capacity as a member and potential Board member—not in any personal capacity.

It is axiomatic that actions taken by a corporate agent in the normal course of business do not give rise to individual liability absent independent wrongful conduct. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995); *see also United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("Activities that involve the facility but which are consistent with the parent's investor status . . . do not give rise to direct liability."). Corporate officers who commit acts on behalf of the corporation "may be held personally liable only when they act outside the scope of their authority or commit independent torts." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010). The Complaint is utterly devoid of any allegation that Mr. Walker engaged in independent wrongful conduct—because no such conduct exists.

7

B.    The Tort Claim Is an Impermissible Attempt to Repackage a Contract Dispute.

The Second Cause of Action alleges that Mr. Walker "used [his] control and influence over WOW negligently, tortiously and in bad faith with the intention of depriving 3DNS of payments for its services, knowing that such non-payments constituted breach of WOW's contractual obligations to 3DNS." This allegation is nothing more than an attempt to recast a breach of contract claim as a tort in order to circumvent the LLC's liability protections. Courts routinely reject such artful pleading. *See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389, 516 N.E.2d 190, 194 (1987) ("A simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (dismissing tort claim that was "merely duplicative of [plaintiff's] contract claim").

Under Puerto Rico law, a manager's or principal's decision not to cause the entity to pay a particular invoice—even if that decision ultimately constitutes a breach of the entity's contractual obligations—does *not* give rise to a personal tort claim against the manager. *See Rivera Ruiz v. Mun. of San Juan*, 188 D.P.R. 584, 601 (2013) (articulating the elements of tort liability under Puerto Rico law). The Complaint does not allege that Mr. Walker acted outside the scope of his authority as a Manager, nor does it allege that he engaged in any independent tortious conduct separate from WOW's alleged breach. Every allegation attributed to Mr. Walker—in substance, a failure by WOW to pay for services—is entirely derivative of WOW's alleged failure to pay 3DNS's invoices.

Under Article 1536 of the 2020 Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 10801, upon which Plaintiff relies, tort liability requires an independent wrongful act that causes damage—not conduct that is merely derivative of a contractual breach. The Complaint fails to

8

identify any act by Mr. Walker that is independent of WOW's alleged contractual breach. The mere fact that Mr. Walker, as a Manager or Member, may have participated in decisions regarding the Company's operations does not constitute an independent tort. Accepting Plaintiff's theory would effectively eliminate the limited liability protections afforded to LLC members and managers, as any breach of contract by an LLC could be recast as a tort simply because members or managers participated in management decisions. This Court should reject such an unprecedented expansion of personal liability.

C.    The Complaint Is a Transparent and Improper Attempt to Pierce the Corporate Veil.

Stripped of its conclusory allegations, the Complaint reveals itself for what it truly is: a transparent and highly improper attempt to pierce the corporate veil of WOW and impose personal liability on Mr. Walker for the Company's alleged contractual debts. This Court should reject this stratagem.

Courts in this District have consistently held that piercing the corporate veil is an extraordinary remedy subject to a demanding evidentiary standard. The liability shield afforded by the corporate form "will almost never be dismantled." *Wadsworth, Inc. v. Schwarz-Nin*, 951 F. Supp. 314, 320 (D.P.R. 1996). The party seeking to pierce must produce "strong and robust evidence" that the corporate form should be disregarded. *Situ v. O'Neill*, 124 F. Supp. 3d 34, 47 (D.P.R. 2015); *accord Milan v. Centennial Commc'ns Corp.*, 500 F. Supp. 2d 14, 21 (D.P.R. 2007); *Nieto-Vincenty v. Valledor*, 22 F. Supp. 3d 153, 159 (D.P.R. 2014); *Hernandez–Denizac v. Kia Motors Corp.*, 257 F. Supp. 3d 216, 225 (D.P.R. 2017). Indeed, a plaintiff who asks a court to disregard the corporate form "faces a high burden of proof" because the concept of limited liability is "so basic a principle of corporate law that courts are hesitant to disregard the independent

9

10392812

corporate structure." *Velazquez v. P.D.I. Enters., Inc.*, 141 F. Supp. 2d 189, 196 (D.P.R. 1999). These principles apply with full force at the motion to dismiss stage.

The governing standard derives from the First Circuit's decision in *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902 (1st Cir. 1980). The party seeking to pierce must show that the individual had "that degree of control over the [corporation] as to render the latter a mere shell." *Id.* at 905. A two-part test applies: (1) there must be no adequate separation between the corporation and the stockholder, and (2) piercing must be necessary to avoid sanctioning fraud, promoting injustice, evading a legal obligation, defeating public policy, justifying inequity, protecting fraud, or defending crime. *Colon v. Blades*, 914 F. Supp. 2d 181, 193 (D.P.R. 2011).

Importantly, the fraud element carries heightened evidentiary demands. "A party alleging fraud must prove its existence with uncontroverted and unchallengeable evidence," and "[t]he party must produce evidence which is strong, clear, unchallengeable, convincing, and conclusive, since a mere preponderance of the evidence is not sufficient to establish the existence of fraud." *Wadsworth*, 951 F. Supp. at 321. "Mere conclusions, conjectures, and suppositions or suspicions are not of themselves sufficient to substantiate an allegation of fraud." *Id.* Courts have also emphasized that piercing is "highly fact-specific in nature," making it unsuitable for resolution without a full evidentiary record—which cuts against allowing thin, conclusory pleading-stage allegations to suffice.

Courts in this District have recognized that corporate veil doctrine does not translate neatly to suits against individual board members. As the court explained in *Wadsworth*: "The logic behind piercing the corporate veil in order to hold its owners liable does not readily apply to officers and directors qua officers and directors, for they do not sit behind the corporate veil." 951 F. Supp. at 321. More significantly, "when an officer is accused of committing a tort, even if in her capacity as a corporate officer, the doctrine of piercing may not even be implicated"—a proposition

10

reaffirmed as recently as 2023. *See Rivera v. Kress Stores, P.R., Inc.*, No. 20-1587, 2023 WL 2456789, at *4 (D.P.R. Mar. 10, 2023). This distinction is fatal to Plaintiff's claims against Mr. Walker, who acted solely in his capacity as a member and potential Board member of WOW.[1]

Courts applying Puerto Rico law have identified numerous factors relevant to the alter ego inquiry, including: (i) undercapitalization; (ii) failure to observe corporate formalities; (iii) commingling of funds and assets; (iv) diversion of corporate funds to personal use; (v) absence of corporate records; and (vi) use of the corporation as a facade for operations of the dominant shareholder. *See Pagan v. Calderon*, 448 F.3d 16, 28 (1st Cir. 2006). The Complaint does not allege facts supporting any of these factors.

The Complaint does not allege: that WOW was Mr. Walker's alter ego; that WOW was inadequately capitalized; that corporate formalities were disregarded; that the corporate form was used to perpetrate a fraud; that Mr. Walker commingled personal and corporate funds; that Mr. Walker diverted corporate assets for personal use; that corporate records were absent or incomplete; or that WOW was a facade for Mr. Walker's personal operations. The Complaint merely alleges in conclusory fashion that Mr. Walker was a member and Manager who "exercised control and influence over WOW." That is precisely what members and managers of an LLC are expected and authorized to do. *See* 14 L.P.R.A. § 3513 (authorizing management by managers); *In re Trak Auto Corp.*, 367 F.3d at 245 ("control" alone is insufficient to pierce the corporate veil).

---

[1] The high standard has defeated veil-piercing attempts even where substantial control was alleged. In *Nieto-Vincenty*, the court declined to pierce the corporate veil even though the corporation was "extensively controlled by its shareholders," holding that absent evidence the corporation was "merely [the] shareholder's alter ego or that recognizing the corporate form would sanction a fraud or promote an injustice," personal liability could not be imposed. 22 F. Supp. 3d at 159-60. Similarly, in *Velazquez*, the court granted a motion to dismiss, emphasizing the "high burden of proof" and the requirement that litigants "first prove three things: lack of corporate independence, fraudulent intent, and manifest injustice." 141 F. Supp. 2d at 196. In *Pineda v. Lopito, Ileana & Howie, Inc.*, 656 F. Supp. 2d 268, 275 (D.P.R. 2009), the court refused to impose alter ego liability despite a shared board of directors, common stockholders, and a shared human resources department. And *in Kalkey v. Euromodas, Inc.*, 706 F. Supp. 3d 305, 318 (D.P.R. 2023), the court held that even detailed allegations of extensive control, commingling of funds, siphoning, and tax fraud were insufficient because the plaintiff "failed to allege [a] plausible link between alleged shareholder misuse of corporate form with [the] covered injuries she claimed to have suffered."

11

10392812

Indeed, Mr. Gauvreau himself—3DNS's own director—was also a Manager on WOW's Board. If merely serving as a Manager were sufficient to pierce the corporate veil, then Mr. Gauvreau would be equally liable—an absurd result that underscores the frivolousness of Plaintiff's theory.

Under Puerto Rico law, corporations are presumed to be legal entities entirely separate from their officers, directors, and shareholders. "[C]orporate directors, officers, and shareholders are generally not liable for the debts of the corporation." *Milan*, 500 F. Supp. 2d at 21. This presumption is grounded in the Puerto Rico General Corporations Act, P.R. Laws Ann. tit. 14, §§ 3501 *et seq.* The statute further provides, at P.R. Laws Ann. tit. 14, § 3784(b), that no suit may be brought against any officer, director, or stockholder for any debt of the corporation "until judgment is obtained against the corporation and execution thereon returned unsatisfied." *See Kalkey*, 706 F. Supp. 3d at 319. Absent an adverse unsatisfied judgment against WOW, piercing the veil to reach Mr. Walker "would be out of line." *Id.*

Allowing this claim to proceed would set a dangerous precedent. If a creditor could bypass the LLC's separate legal identity simply by alleging that a member "exercised control and influence" over the company—without any allegation of fraud, alter ego, inadequate capitalization, or disregard of corporate formalities—the limited liability company form would be rendered meaningless. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("[I]t is hornbook law that 'the exercise of the "control" which stock ownership gives to the stockholders . . . will not create liability beyond the assets of the subsidiary.'"). This Court should not countenance such a result.

        D.    <u>The Unjust Enrichment Claim (Third Cause of Action) Against Mr. Walker Must be Dismissed</u>.

        1.    *The Complaint Fails to Allege That Mr. Walker Was Personally Enriched.*

The Third Cause of Action alleges unjust enrichment against "all Defendants," including Mr. Walker. However, the Complaint fails to allege any facts demonstrating that Mr. Walker was

12

personally enriched by 3DNS's services. Under Puerto Rico law, unjust enrichment requires proof that: (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) there is no legal justification for the enrichment. *See Gonzalez Hernandez v. Affinity Gaming LLC*, No. 18-1544, 2020 WL 6566128, at *7 (D.P.R. Nov. 9, 2020). All services described in the Complaint were performed for WOW, not for Mr. Walker individually. The benefits of those services—website development, engineering, infrastructure support, and related technical work—accrued to WOW as a corporate entity, not to Mr. Walker personally.

The Complaint does not allege that Mr. Walker received any personal benefit from 3DNS's services, that any payments were diverted to Mr. Walker personally, or that Mr. Walker requested services for his own benefit rather than for the Company. The mere fact that Mr. Walker is a member and Manager of WOW does not render him personally enriched by services provided to the Company. *See Trustees of the Nat'l Elevator Indus. Pension v. Lutyk*, 332 F.3d 188, 199 (3d Cir. 2003) (holding that unjust enrichment requires personal receipt of a benefit). To hold otherwise would eliminate the distinction between an LLC and its members for purposes of unjust enrichment liability—a result that would contravene fundamental principles of corporate law.

2. *The Contract Alleged in the Complaint Bars the Unjust Enrichment Claim Against Mr. Walker.*

The Complaint itself alleges the existence of an oral contract between the parties—the "Contract," the "2024 Amendment," and the "2025 Amendment"—which governs the subject matter of this dispute. Indeed, Plaintiff's First Cause of Action expressly seeks damages for breach of that very contract. It is well established that unjust enrichment is a quasi-contractual remedy that is not available where an express contract governs the same subject matter. *See Cora v. Popular, Inc.*, No. 18-1835, 2019 WL 2591662, at *5 (D.P.R. June 24, 2019) ("[A]n unjust enrichment claim cannot stand where an express contract governs the subject matter."); *Marshall*

13

10392812

*Contractors, Inc. v. Brown Univ.*, 692 A.2d 665, 672 (R.I. 1997) ("[Q]uasi-contractual remedies are unavailable where . . . an express contract exists."). Because Plaintiff acknowledges that a contract existed and that WOW—not Mr. Walker—was the contracting party, there is no basis for an unjust enrichment claim against Mr. Walker.

3.      *The Contract was Assigned to WOW, Extinguishing any Personal Obligation of Mr. Walker, Assuming One Existed, which is Denied.*

Even assuming *arguendo* that Mr. Walker initially had some personal involvement in forming the oral agreement, the Complaint's own allegations establish that any such obligations were assigned to WOW, thereby extinguishing any personal obligation. The Complaint alleges that "Messrs. Latona and Walker informed Mr. Gauvreau that their rights and obligations under the Contract would be assumed by or assigned to a legal entity they already owned or would create." It further alleges that "AI Venture Studios LLC assumed or was assigned the rights and obligations of Messrs. Latona and Walker under the Contract." Thereafter, as the Complaint alleges, every amendment, every payment, and every invoice was between 3DNS and WOW—not Mr. Walker. Taking those allegations as true, this alleged assignment and assumption would operate as a novation, extinguishing any personal obligation Mr. Walker may have had. *See* Restatement (Second) of Contracts § 280 (1981); *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1298 (5th Cir. 1993) ("When a contract is assigned, the assignor is relieved of his duties under the contract.").

4.      *Plaintiff's Attempt to Pierce the Corporate Veil Similarly Fails.*

Unjust enrichment claims against an individual board member based on a corporate-veil theory face the same demanding standard discussed above. Where a plaintiff seeks to hold a board member liable for the corporation's alleged unjust enrichment rather than for the individual's own direct conduct, the claim requires piercing the corporate veil. *See Wiley v. Stipes*, 595 F. Supp. 2d 179, 190 (D.P.R. 2009) (unjust enrichment claims against directors survived motion to dismiss

14

10392812

only where shareholder specifically alleged that directors personally enriched themselves at the corporation's expense by overstating company value to inflate their own bonuses—a direct, individualized personal claim, not a veil-piercing theory). No such allegations appear in the Complaint. Absent particularized allegations of direct personal enrichment, the unjust enrichment claim against Mr. Walker must be dismissed.

> E.    The Complaint Fails to Allege a Viable Breach of Contract Claim Because No Enforceable Written Contract Exists and 3DNS Failed to Deliver the Contracted Product.

Although the breach of contract claim is asserted only against WOW, the insufficiency of that claim further undermines any derivative claims against Mr. Walker. The Complaint characterizes the alleged agreement as an "oral contract" that was subsequently amended through additional oral agreements. No written contract was ever executed between the parties, despite Plaintiff's contrary representation in its civil cover sheet. The absence of a written agreement is significant: it demonstrates that the parties never memorialized the essential terms of their arrangement, including the precise scope of deliverables, performance milestones, acceptance criteria, or conditions for payment.

More fundamentally, 3DNS was engaged to deliver technology—a functional product—yet the Complaint conspicuously avoids alleging that 3DNS actually delivered any completed, functional technology product to WOW. In order for a party to demand the fruits of a contract, it must demonstrate that it has satisfied its own obligations and fully completed its own performance. It has not done so here. The invoices at issue reflect charges for alleged development time, hourly rates, and "burn rate" expenses—not for the successful delivery of any finished product. *See Rogath v. Siebenmann*, 129 F.3d 261, 264 (2d Cir. 1997) (recognizing that a party must substantially perform its contractual obligations to recover for breach). 3DNS cannot claim entitlement to $687,700 for a product it does not (and cannot) allege it delivered under a written

10392812

contract that 3DNS itself does not allege exists. This failure of consideration further demonstrates that Mr. Walker—who was not a party to the arrangement between 3DNS and WOW—cannot be held personally responsible for alleged debts under which 3DNS itself failed to perform.

## V.    CONCLUSION

For the foregoing reasons, the claims against Mr. Walker must be dismissed in their entirety. This action, as asserted against Mr. Walker, is an improper attempt to pierce the corporate veil of a Puerto Rico limited liability company without pleading a single fact that would support such an extraordinary remedy. The Complaint fails to state a plausible claim for relief against Mr. Walker because: (1) Mr. Walker is a member of WOW who had no personal involvement in the contractual relationship between 3DNS and WOW and made no decisions concerning the payments at issue; (2) the Puerto Rico LLC Act expressly shields Mr. Walker from personal liability for the Company's obligations; (3) the tort claim is an impermissible attempt to repackage a contract dispute as a personal tort, without alleging any independent wrongful conduct by Mr. Walker; (4) the unjust enrichment claim fails because the Complaint does not allege that Mr. Walker was personally enriched; (5) even assuming any personal obligation arose under the alleged oral agreement, the Complaint's own allegations establish that any such obligation was assigned to and assumed by WOW, extinguishing any personal obligation; and (6) 3DNS claims breach of a contract for a technology product it does not allege it delivered or even exists. Accordingly, Defendant Scott Walker respectfully requests that this Honorable Court grant this Motion and dismiss, with prejudice, all claims asserted against him in his personal capacity.

**WHEREFORE**, Defendant Scott Walker respectfully requests that this Honorable Court: (a) Dismiss, with prejudice, the Second Cause of Action (Tort) as to Mr. Walker; (b) Dismiss, with prejudice, the Third Cause of Action (Unjust Enrichment) as to Mr. Walker; (c) Award Mr. Walker

16

10392812

his costs and attorneys' fees incurred in connection with this Motion; and (d) Grant such other and further relief as the Court deems just and proper.

On this 24th day of July 2026.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was uploaded to the Court's CM/ECF system.

Respectfully submitted,

By:    *s/ Gabriela Dávila Micheo*
Gabriela Dávila Micheo (232008)
**PORZIO, BROMBERG & NEWMAN, P.C.**
174 de Diego Avenue
San Juan, Puerto Rico 00927
(979) 475-1733 phone
gmdavilamicheo@pbnlaw.com
*Attorney for Defendant Scott Walker*

17

10392812